**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 26-mj-155** |
| **JOSEPH PIERRE HARRIS, III,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

Defendant Joseph Pierre Harris, III, should be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) because this case involves the possession of a firearm, and pursuant to 18 U.S.C. § 3142(d)(1)(A)(iii) as the defendant was on probation at the time of the charged conduct. On September 1, 2026, the defendant was arrested for unlawfully possessing a firearm after officers initially observed the defendant smoking a marijuana cigarette in a public place. At the time of the offense, the defendant was on probation in Montgomery County, Maryland, for a firearm conviction, that began on January 7, 2026. The defendant was on probation for mere months before he violated his conditions and unlawfully possessed a firearm. Given the defendant's repeated history of illegally possessing firearms and his disregard for court ordered conditions, detention is appropriate in this matter. Accordingly, the government agrees with Pretrial Services' recommendation that no condition or combination of conditions can reasonably assure Harris's appearance in court or the safety of the community.

## FACTUAL BACKGROUND

On September 1, 2026, at approximately 11:14 p.m., United States Park Police officers were conducting routine patrol in the 4900 block of G Street Southeast in Washington, D.C. Officers observed large clouds of smoke emanating in the air inside a parking lot and drove toward

the smoke to investigate. Officers observed an individual, later identified as Jospeh Pierre Harris, III, ("the defendant") standing next to an open driver-side door of a Toyota with Maryland license plate 7GR1742. Officers observed the defendant smoking a white marijuana cigarette and discard that cigarette once they approached.

Officer Vanriel then walked up to the defendant and smelt an odor consistent with that of burnt marijuana. He then observed the defendant turn the front of his body away and shield it from Officer Vanriel's view. Officer Vanriel then attempted to stop the defendant and felt a hard metal object in the front right portion of his waistband. Based on his training and experience, Officer Vanriel recognized the hard object to be a firearm. Other officers then came to assist Officer Vanriel and Sergeant Payne removed the firearm from the defendant's waistband.




*Figure 1: A screenshot of officer body-worn camera in which the firearm is removed from the defendant's waistband.*

Sgt. Payne also recovered the burnt marijuana cigarette that the defendant had dropped. Specifically, the marijuana cigarette was recovered from the ground in the area by the rear driver's

side of the vehicle. At the time Sgt. Payne recovered the marijuana cigarette, one of the ends appeared to still be glowing after having been lit.




*Figure 2: A screenshot of officer body-worn camera in which the burnt marijuana cigarette is recovered from the ground.*

The firearm that was recovered was a black 9mm Taurus G3, serial number ADE321601. The firearm was loaded with one round of 9mm ammunition in the chamber and 7 rounds 9mm ammunition in a 17-capacity magazine.



*Figure 3: The firearm that was recovered from the defendant's front waistband and the burnt marijuana cigarette that was recovered from the ground by Sgt. Payne.*

A check of police records revealed that the defendant was not licensed to possess a firearm in the District of Columbia, nor was the firearm registered in the District of Columbia. The recovered marijuana cigarette field tested positive for containing THC and weighed 0.4 grams.

**PROCEDURAL BACKGROUND**

On September 3, 2026, a complaint was filed against the defendant charging him with Unlawful Possession of Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1) (ECF No. 1).

On September 4, the defendant had his initial appearance on the complaint, and the Court set the matter for a detention hearing on September 8, 2026.

## ARGUMENT

The Bail Reform Act of 1984 provides, in pertinent part, that the court "shall order" a defendant detained before trial if "no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In determining whether pretrial detention is warranted, the court considers four statutory factors: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the United States may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that can reasonably assure the safety of the community.

### I. Nature and Circumstance of the Offense Support Detention.

The defendant was arrested after being found in possession of a loaded firearm and ammunition. Merely possessing a firearm in public "poses an inherent risk of danger to the

community." *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 WL 1778194, at *7 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases for the proposition that "unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public"). The offense is so serious that it carries a maximum sentence of 15 years in prison. *See United States v. Simpson*, No. CR 25-261 (RBW), 2025 WL 3211574, at *4 (D.D.C. Nov. 18, 2025).

Here, the defendant carried a firearm on his person that had a round loaded in the chamber and an extended magazine—notably the firearm was in his front waistband and was readily accessible. The firearm contained seven 9mm rounds of ammunition in the seventeen-capacity magazine, with an addition one round of 9mm ammunition in chamber. A single pull of the trigger—intentional or unintentional—could have gravely injured a member of the community. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) ("Notably, the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling.").

To make matters worse, the defendant possessed a loaded firearm months after he began probation from a previous firearm related offense. He was approximately eight months into a three-year probation period. Yet the defendant still chose to carry a firearm despite one of his probation conditions specifically indicating that he is not allowed to possess firearms. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) ("Of particular significance is that Defendant was on supervised release at the time of his arrest in this matter[.]" (citation omitted)). "The fact that he violated one of the most important conditions of his release—that he should not engage in other criminal activity—indicates that [he] is unwilling to conform his conduct to the dictates of the

law." *See United States v. Wills*, 311 F. Supp. 3d 144, 148 (D.D.C. 2018) (ordering a defendant detained pretrial when "he was arrested on [firearm and drug charges] a scant two months after his release from prison on [a] robbery charge"); *see also Blackson*, 2023 WL 1778194, at *8 ("[D]efendant was on supervision at the time of his arrest making evident his disregard of the law forbidding his possession of a firearm and automatically raising concern about whether he can be trusted to comply with any conditions of pretrial release.").

Thus, the nature and circumstances of the offense warrant detention.

## II. The Weight of the Evidence Against the Defendant is Strong.

The weight of the evidence in this case is strong. Officers recovered a loaded firearm directly from the defendant's front waistband. *See United States v. Riggins*, 456 F. Supp. 3d 138, 145 (D.D.C. 2020) (finding that the weight of the evidence weighed in favor of detention because, "[a]ccording to the Government's unrebutted description of the event, [the defendant] was found with the firearm on his person"). And the recovery was captured on body-worn camera footage. *See United States v. Howard*, No. 20-mj-181, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) (finding that "the weight of the evidence against defendant is strong and favors detention" because "[t]he loaded firearm was discovered directly on defendant's person" as "corroborated by the arresting officer's body camera footage"). The body-worn camera also captured officers recovering the marijuana cigarette from the ground, and showed that the marijuana cigragette was still glowing after having recently been lit. This objective corroboration of the officers' observations adds to the weight of the evidence.

In sum, the strength of the evidence against the defendant is very strong and favors detention. *See Blackson*, 2023 WL 1778194, at *10 ("[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that . . . may indicate that the defendant is a present danger to himself or the community if the government's

allegations later prove to be true.”).

**III. The Defendant’s History and Characteristics Merit Detention.**

The defendant is only twenty years old, yet he nevertheless has a significant criminal conviction. A little less than a year ago, the defendant was convicted in Montgomery County, Maryland, case number C-15-CR-000841 of Reckless Endangerment and Loaded Handgun on a Person on November 13, 2025. For that conviction, he received a sentence of 4 years, with 4 years suspended, and 3 years’ probation. In that case, the defendant began supervision on January 7, 2026, with a projected expiration date of January 7, 2029. Moreover, per the Pretrial Services Report, the defendant is required to report to Maryland Department of Parole and Probation at least twice a month and he has failed to do. The defendant last reported on August 17, 2026. Further, he failed to verify his address and his employment. Most notably, one of his conditions on probation is to “forfeit all firearms ownership and [] not possess any firearm.” *See* Pretrial Services Report. Maryland has now sought a warrant for a violation of his probation. Furthermore, it appears the defendant had an arrest on May 9, 2023, for Assault, First-Degree and Armed Robbery also in Montgomery County. Per the Pretrial Services Report, that matter was remanded to juvenile court. Still, that arrest gives pause for concern.

It is clear that the defendant cannot abide by simple conditions imposed on him while on probation. Now, he faces a more serious federal offense. If released pending trial, the defendant will likely have to abide by more stringent conditions of release. His actions demonstrate an unwillingness to do so and thus, detention is appropriate.

**IV. The Defendant Presents a Danger to the Community.**

Finally, the defendant presents a clear danger to the community. The standard for establishing dangerousness is clear and convincing evidence, which is met under the facts presented here. Specifically, the defendant possessed a firearm notwithstanding his status as a

prohibited person and notwithstanding his probation conditions from that prior conviction. Releasing the defendant on conditions such as prohibiting him from possessing firearms, would simply repeat a prohibition that already existed—and one that he so clearly ignored. The fact that the defendant violated court orders and supervision demonstrates why yet another set of conditions would not reasonably assure the safety of the community.

Electronic monitoring, third-party custodian, and other similar conditions cannot eliminate the risk that the defendant will obtain yet another firearm or otherwise engage in dangerous conduct. By his own actions, the defendant has already demonstrated a failure to comply with substantially less restrictive court supervision.

## CONCLUSION

Given the seriousness of the offense conduct, the strength of the evidence, and the danger to the community, the government respectfully submits—and concurs with Pretrial Services' recommendation—that no condition or combination of conditions can reasonably assure the safety of the community and therefore detention pending trial is warranted.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Lauren Ibanez*
LAUREN IBANEZ
Assistant United States Attorney
NJ Bar No. 261642019
601 D Street NW, Washington, D.C. 20530
Phone: 202-252-7566
Lauren.Ibanez@usdoj.gov