**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 26-MJ-155** |
| | ) | |
| **JOSEPH HARRIS** | ) | |
| | ) | |

## MOTION AND MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

Joseph Harris, through the undersigned attorney, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Section 3142(b) states that the Court "shall order the pretrial release of [Mr. Harris] on personal recognizance . . . unless" there are absolutely no conditions of release that would ensure Mr. Harris's appearance at court and the safety of the community. It is the government's burden to show either (1) by a preponderance of the evidence that Mr. Harris is a risk of flight or (2) by clear and convincing evidence that no conditions can ensure the safety of the community. The government has not and cannot meet that burden. Mr. Harris has strong ties to Washington, D.C., a limited and non-violent criminal history, and a brother who is prepared to serve as a third-party custodian and support him during his release. Mr. Harris asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

### I. Background

Mr. Harris was arrested on September 1, 2026. He was originally charged in Superior Court before the case was transferred to federal court. The government moved to detain Mr. Harris pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) and a detention hearing is set for Tuesday, September 8, 2026.

## II. Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

It is the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Harris be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

## III. The Government Cannot Meet Its Burden to Demonstrate that Mr. Harris is a Danger to the Community.

The D.C. Circuit reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community). The government cannot meet its burden here and Mr. Harris should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Harris's appearance at trial and protect the public.

### *A. The Nature and Circumstances of the Offense*

The Complaint charges Mr. Harris with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). There are no allegations that Mr. Harris used or brandished the firearm. Officers were not summoned to the area due to a 911 call or report of firearm use. The allegations that Mr. Harris possessed a firearm are not alone clear and convincing evidence to justify his detention as a danger to the community. In fact, individuals charged with firearms offenses have been repeatedly released in this District, including in cases (unlike here) where the defendant allegedly fled from police and discarded the firearm. *See, e.g., United States v. Abass*,

No. 25-cr-79 (defendant allegedly fled and tossed firearm; drugs found in search of his person); *United States v. Gaskins/Gaines*, No. 25-cr-39 (both defendants released; both alleged to have fled and tossed firearms); *United States v. Belton*, No. 25-mj-51 (defendant charged with 924(c) and possession with intent to distribute); *United States v. Robinson*, No. 24-cr-95 (defendant fled from police; on probation at the time of arrest); *United States v. Yates*, No. 24-cr-89 (defendant charged with 924(c) and possession with intent to distribute cocaine; alleged machinegun switch); *United States v. Griffith*, No. 24-cr-56 (defendant fled from police); *United States v. Wiggins*, No. 23-cr-109 (defendant fled from policed and tossed firearm; firearm fitted with a "giggle switch"); *United States v. Jones*, No. 23-cr-154 (defendant fled from police; case later dismissed after suppression hearing); *United States v. Hicks*, No. 19-cr-288 (firearm allegedly tossed).

Courts have also released individuals in firearm cases where the person was on probation or parole at the time of the arrest. *See, e.g., United States v. Mickens*, No. 25-cr-48; *United States v. Vines*, No. 25-cr-91; *United States v. Clark*, No. 25-cr-112.

Judge Bates recently upheld a release decision in a firearms case and specifically noted that the possession of a firearm alone does not justify detention.

> The nature and circumstances of the offense charged do not strongly show that Bryant is a flight risk or a danger the community. While § 922(g)(1) involves firearms, courts have recognized that it is not a crime of violence under the BRA. *See generally, e.g., United States v. Gloster*, 969 F. Supp. 92 (D.D.C. 1997). Additionally, the government alleges only that Bryant possessed—not that he used—the firearm at issue. . . . The Court acknowledges the inherent danger that a loaded firearm presents but finds that the allegations here do not weigh heavily in favor of pretrial detention.

*United States v. Bryant*, No. 25-cr-97, ECF No. 15 at 2. The nature and circumstances of the case do not require detention in this case.

*B. The Weight of the Evidence*

The weight of the evidence is just one factor and it should be considered against the presumption of innocence. Mr. Harris is innocent until proven guilty and too much consideration of the weight of the evidence flies in the face of that important constitutional protection. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

Additionally, despite the potential strength of the evidence on some elements, Mr. Harris has strong arguments that he was not aware of his status as a prohibited person. The Supreme Court in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), held that the government is required to prove that Mr. Harris knew he was a prohibited person at the time of his possession of the firearm. Mr. Harris's only prior conviction is for a Maryland misdemeanor, where he served a sentence of less than a year of incarceration. The Fourth Circuit has addressed these knowledge issues in *United States v. Barronette*, 46 F.4th 177, 197-202 (2022) and *United States v. Banks*, 104 F.4th 496, 514-16 (2024), reversing convictions in felon in possession cases because the government did not prove knowledge and based on the facts of the prior convictions and the sentences (Maryland misdemeanors with less than 2 year incarceration sentences) "there is a reasonable probability that a jury would have 'reasonable doubts as to the knowledge-of-felon-status element.'" *Barronette*, 46 F.4th at 201. This case is remarkably similar to *Barronette*, where the defendant in that case had one prior Maryland misdemeanor conviction and received a short term of incarceration. The Fourth Circuit held that "[t]hese circumstances combine to effect 'a miscarriage of justice' should be affirm his § 922(g)(1) convictions." *Banks*, 104 F.4th at 516. Mr. Harris has strong arguments to dispute the knowledge requirement in § 922(g)(1) and, therefore, the weight of the evidence is not strong and cannot support his detention.

*C. The History and Characteristics of Mr. Harris*

Mr. Harris' history and characteristics demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community. Mr. Harris has significant ties to the community, including his siblings and his parents. He lives with one of his older brothers and works at Giant with his other older brother. If released, Mr. Harris can return to work at Giant, where he works in the produce section. Mr. Harris is also currently enrolled in online college courses with the University of Maryland Globel College. He is taking two classes focused on business.

Mr. Harris has one prior nonviolent conviction and he while the pretrial services report states he has not yet verified his employment or address, he is recently employed and he has been checking in with his probation officer, even as recently as two weeks prior to his arrest. There is not currently a warrant out of Maryland and the Court can include a condition of release that Mr. Harris go to Maryland and check in with his probation officer. Mr. Harris has been working hard during his term of probation to get employment, enroll in school, and work toward a more productive future. Pretrial release in this case will allow Mr. Harris to continue on that path.

Additionally, Mr. Harris is seeking release under much more stringent conditions than he was under as part of his probation, specifically high intensity supervision. Mr. Harris has no violent past offenses and his criminal history does not demonstrate that he is a current danger or risk of flight, which is what the government must establish to justify detention. Mr. Harris's history and characteristics do not provide clear and convincing evidence to support his pretrial detention.

*D. The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Harris's Release*

The government has not and cannot provide clear and convincing evidence to support a finding that Mr. Harris would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Harris currently poses an unmitigable threat to public safety. Instead, the government again relies on the alleged possession of a firearm. None of the government's arguments demonstrate clear and convincing evidence that Mr. Harris is presently a danger to the community.

In fact, stringent conditions of release can ensure the safety of the community.

*E. Past Similar Cases That Resulted in Pre-trial Release*

While the Court cannot and should not require that counsel provide an example of a similarly situation person who was released in the past to justify release, especially in a case where there is a presumption of release like this one, magistrate and district judges in D.D.C. have released individuals in the recent past with similar charges, more significant alleged conduct, and where the individual was on supervision in another case.

First, in *United States v. Joseph Robinson*, No. 24-cr-95 (TSC), Mr. Robinson was alleged to have fled from the police after throwing a loaded gun, was on probation for Assault with a Deadly Weapon, and drugs were also found in his vehicle. Mr. Robinson was released.

Second, in *United States v. Paul Mickens*, No. 25-cr-048 (AHA), Mr. Mickens was released even though he had a parole detainer because he was also under supervision. Mr. Mickens was also accused of running from police and had three prior convictions.

**IV. Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Harris Does Not Pose A Serious Risk of Flight or Danger to the Community.**

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[1] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[2] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[3] The below chart reflects this data:

[1] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[2] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* AO Table H-14A.

[3] *See* AO Table H-15; AO Table H-14A.




**V. Mr. Harris Must Be Released Because There Are Conditions That Will Reasonably Ensure Appearance and Safety.**

Mr. Harris must be released because there are conditions that will reasonably ensure the safety of the community and Mr. Harris's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government cannot carry its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id*. at 708 n.8. The government also cannot prove by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Harris's appearance in court. Thus, Mr. Harris should be released.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Harris's appearance in court and the safety of the community.

- High Intensity Supervision Program;

- Maintain or actively seek employment, *id.* § 3142(c)(1)(B)(ii);
- Report on a "regular basis" to PTS or some other agency, *id.* § 3142(c)(1)(B)(vi);
- Comply with a curfew, *id.* § 3142(c)(1)(B)(vii);
- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id.* § 3142(c)(1)(B)(viii);
- Refrain from "excessive use of alcohol," *id.* § 3142(c)(1)(B)(ix); and
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id.* § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure Mr. Harris's appearance in court and the safety of the community, he should be released.

## VI. Conclusion

For the foregoing reasons, Mr. Harris respectfully requests that this Court release him with conditions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
Diane Shrewsbury
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500